UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| REYMUNDO SAUCEDA,<br><br>               Movant,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>             Respondent. | 4:21-CV-04172-KES<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on the *pro se* motion of Reymundo Sauceda to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255. See Docket No. 1.[1] Now pending is a motion by the United States ("government") to dismiss Mr. Sauceda's motion without holding an evidentiary hearing. See Docket No. 18. Also pending is Mr. Sauceda's motion to strike portions of attorney James Eirinberg's sworn affidavit. See Docket No. 22. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

---

[1] Documents cited from this civil habeas file will be cited using the court's assigned docket number. Documents from Mr. Sauceda's underlying criminal case, United States v. Sauceda et al, 4:16-CR-40083-KES-1 (D.S.D.), will be cited using the court's assigned docket number preceded by "CR."

## FACTS

**A.    Mr. Sauceda's § 2255 Petition**

Mr. Sauceda timely filed a motion with this court pursuant to 28 U.S.C. § 2255[2].  He raises four claims of ineffective assistance of counsel.  See Docket Nos. 1 & 2.  He asserts his attorney was ineffective by (1) failing to sequester witnesses at his sentencing hearing, (2) "challeng[ing] facts in the PSR that had been stipulated" and "frivolously challenging all the contested facts in the PSR Report," (3) "fail[ing] to raise on appeal that the court had incorrectly determined that Sauceda was a leader/organizer under § 3B1.1," and (4) counsel's cumulative errors require resentencing.  Id.

---

[2] There is a one-year statute of limitations for filing a § 2255 motion which began to run in Mr. Sauceda's case at the time his conviction and judgment became final.  See 28 U.S.C. § 2255(f).  He was sentenced on June 11, 2019, and the court entered its judgment on June 17, 2019.  See CR Docket Nos. 476 & 479.  He timely filed a notice of appeal on June 17, 2019.  See CR Docket No. 480; FED. R. APP. P. 4(b)(1)(A).  The Eighth Circuit affirmed Mr. Sauceda's sentence on May 26, 2020.  See CR Docket Nos. 532 & 533; United States v. Sauceda, 960 F.3d 495, 498-99 (8th Cir. 2020).  Because Mr. Sauceda did not file a writ of certiorari with the United States Supreme Court, his sentence would have become final 90 days later on August 24, 2020.  Clay v. United States, 537 U.S. 522, 525 (2003).  However, on March 19, 2020, the Supreme Court issued an order stating that "[i]n light of the ongoing public health concerns relating to COVID-19 . . . the deadline to file any petition for a writ of certiorari . . . is extended to 150 days from the date of the lower court judgment."  See Order, No. 589, 2020 U.S. LEXIS 1643 (Mar. 19, 2020).  Thus, Mr. Sauceda's conviction would have become "final" on October 23, 2020.  Mr. Sauceda filed his § 2255 motion on October 21, 2021, two days before the end of the one-year statute of limitations, making his motion timely.

**B.    Initial Appearances and Petition to Plea Guilty**

Mr. Sauceda was initially charged by a criminal complaint.  CR Docket No. 1.  Attorney Kenneth Tschetter[3] was appointed to represent Mr. Sauceda and an initial appearance was held.  CR Docket Nos. 10 & 11.  Mr. Sauceda, and his co-defendant, were later indicted and charged with conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  CR Docket No. 14.

A superseding indictment was subsequently filed, which added another co-defendant, a firearms charge, and a forfeiture allegation against the new defendant.  CR Docket No. 83.  A second superseding indictment was later filed which added a third co-defendant.[4]  CR Docket No. 204.  Finally, the government filed a third superseding indictment which removed one of the co-defendants after they pled guilty.  CR Docket No. 343, 314, 326.

---

[3] Kenneth Tschetter filed a motion to withdraw on August 30, 2016, and the court granted that motion the following day.  CR Docket Nos. 37 & 38.  Attorney Clint Sargent was appointed and later withdrew.  CR Docket Nos. 38, 47, 48.  Attorney David Palmer was appointed, Mr. Sauceda moved for appointment of a new CJA counsel twice, and the court later granted the second motion.  CR Docket Nos. 48, 73, 75, 76, 140, 142, 143, 146.  The court appointed Attorney James Eirinberg, Mr. Sauceda moved for appointment of a new CJA counsel three times, and all three motions were denied.  CR Docket Nos. 146, 171, 177, 226, 231, 267, 272.  Mr. Sauceda also complained about the ineffectiveness of Mr. Eirinberg within a motion to withdraw his guilty plea, which was denied.  CR Docket No. 454, 455, 461.

[4] By the time this second superseding indictment was filed, one of the co-defendants pled guilty.  See CR Docket Nos. 114 & 124.

The government filed an information pursuant to 21 U.S.C. § 851, giving Mr. Sauceda notice of its "intent to seek increased punishment based upon the defendant's prior conviction for a felony drug offense."  CR Docket No. 368.

Mr. Sauceda later filed a petition to enter an "open" plea and pled guilty to count I of the third superseding indictment.  CR Docket No. 422 & 423.  This petition was signed by Mr. Sauceda and his then-attorney Mr. James Eirinberg and stated that Mr. Sauceda was "fully advised of his statutory and constitutional rights," and understood that the statutory minimum is fifteen years, the maximum is life imprisonment, a $20,000 fine, and a 10-year period of supervised release.  CR Docket No. 422.  Within this petition, Mr. Sauceda agreed that the facts stated in his Factual Basis Statement were true and "provides the basis for his guilty plea."  Id.

**C.    The Change of Plea Hearing**

The change of plea hearing was held, and Mr. Sauceda was placed under oath.  CR Docket No. 511.  He affirmed that he had not been treated recently for any mental illness or addiction and was not under the influence of any drug, medication, or alcoholic beverage.  Id. at 3.  Mr. Sauceda affirmed that he had discussed the charges against him with his attorney, Mr. Eirinberg, and was fully satisfied with the counsel, representation, and advice he had received.  Id. at 3-4.  Mr. Sauceda affirmed that he signed a petition to plead guilty and that he understood all the terms within.  Id. at 4.  Mr. Sauceda confirmed that he was not forced or threatened to plead guilty, and he was pleading guilty on his own free will because he was guilty.  Id. at 4-5.

4

The court explained to Mr. Sauceda the mandatory minimum and possible maximum penalties for the offense. Mr. Sauceda stated he understood. Id. at 5-6. The court explained that his sentence will be impacted by his prior criminal history record, the quantity of drugs attributable to the conspiracy, and his role in the offense. Id. at 8. The court explained to Mr. Sauceda that the sentencing guideline range they find may be different than what he was expecting, and Mr. Sauceda stated he understood. Id. at 8-9. Mr. Sauceda stated he understood that if he were sentenced to prison, he would not get out early on federal parole. Id. at 9. The court explained that Mr. Sauceda could still plead not guilty to the offense and would have the right to a trial by jury, however, if he entered the plea of guilty today, there would not be a trial and he will have given up rights entitled to criminal defendants. Id. at 9-11.

Mr. Sauceda affirmed that as part of his petition to plead guilty, it also included a factual basis statement. Id. at 12. Mr. Sauceda affirmed that everything within the factual basis statement was true. Id. Mr. Sauceda then pled guilty to Count 1 of the third superseding indictment that charged him with conspiracy to distribute a controlled substance. Id. at 13. Mr. Sauceda also admitted that he had a prior conviction for distribution of more than one pound of marijuana from Minnehaha County. Id. at 14.

After the change of plea hearing, Mr. Sauceda moved to withdraw his plea of guilty. See CR Docket No. 454. Mr. Sauceda asserted he was incompetent, unaware, and mislead by his attorney on the number of years he

could be sentenced to.  Id.  The court denied this motion.  See CR Docket No. 461.

**D.     The Draft and Final PSR and Objections to the PSR**

A draft presentence report ("PSR") was filed which calculated Mr. Sauceda's total offense level to be 43.[5]  CR Docket No. 449 at 13-14. Importantly, the draft PSR recommended giving Mr. Sauceda *no* adjustment for acceptance of responsibility.  See id. at p. 14, ¶ 54.  The draft PSR calculated Mr. Sauceda's criminal history points, gave him a criminal history score of 8, and placed him in criminal history category IV.  Id. at 16.  Based on the total offense level of 43 and a criminal history category of IV, the draft PSR calculated Mr. Sauceda's advisory USSG range was life imprisonment.  Id. at 20.

A final PSR was filed in which the USSG guideline calculation remained unchanged—life imprisonment.  CR Docket No. 470 at 20.  Again, the final PSR recommended that Mr. Sauceda be given *no* adjustment for acceptance of responsibility.  Id. at p. 14, ¶ 54.

Prior to Mr. Sauceda's sentencing hearing, counsel filed 36[6] objections to the draft PSR.  See CR Docket No. 453.  Counsel also filed a motion for

---

[5] The PSR assigned a base offense level of 36, added two levels under USSG § 2D1.1(b)(1) for a co-conspirator possessing a weapon, added four levels for a leader/organizer enhancement, and two levels for obstruction of justice.  While this would place Mr. Sauceda at an offense level of 44, under Chapter 5, Part A (comment n.2), when an offense level is calculated in excess of 43, the offense level will be treated as a level 43.

[6] The last numbered objection in CR Docket No. 453 is numbered 34. However, this is a typo—Mr. Sauceda had 36 objections to the draft PSR.

downward departure under the sentencing guidelines and/or a Booker[7]

variance.  See CR Docket Nos. 468 & 469.

**E.    Sentencing Hearing**

The court held a two-day sentencing hearing.  See CR Docket Nos. 473 &

476.  United States Postal Inspector Derek Ryan testified at the sentencing

hearing that he began his involvement in this matter when the South Dakota

Division of Criminal Investigation (DCI) reached out about a Sioux Falls

address receiving narcotics through the mail from Texas.  CR Docket No. 513,

p. 10.  During his investigation, Mr. Ryan cultivated information from

individuals involved in drug trafficking who cooperated with law enforcement.

Id.  Mr. Ryan testified that information from cooperators was reliable, against

their own penal interests, and corroborated through other witness statements,

information from subpoenas, information from businesses, surveillance videos,

and business records.  Id. at 12-17.  These individuals were identified as

Witnesses No. 1, No. 2, No. 3, No. 4, No. 5, No. 6, No. 7, No. 8, No. 9, and

No. 10[8].  Id.  Witnesses Nos. 5 and 6 participated in methamphetamine

distribution in the Sioux Falls area.  Id. at 14-15.

---

[7] United States v. Booker, 543 U.S. 220 (2005).

[8] The court notes that these individuals were not witnesses at Mr. Sauceda's
sentencing hearing.  These individuals were listed on the government's Exhibit
1, which the sentencing court ordered sealed for witness safety.  Docket
No. 513, p. 8.  The sentencing court permitted the witnesses, or government
informants, to be referred by a number.

Special Agent Dan Byron of the DCI testified about his knowledge of Mr. Sauceda and his involvement with the Tri-City Bombers ("TCB"), who distributed meth, cocaine, and marijuana in the Sioux Falls area. Id. at 19. Agent Byron testified that Witnesses Nos. 1, 2, 3, and 4 provided information on TCB's distribution of drugs in Sioux Falls. Id. Agent Byron testified that Witnesses Nos. 1, 2, and 3 indicated that Mr. Sauceda was a sergeant in the TCB and provided direction to local members. Id. at 21. The witnesses indicated Mr. Sauceda directed what they sold and who they sold to. Id. at 22.

Mr. Ryan then gave more details regarding packages containing contraband that arrived from Texas. Id. at 37. Mr. Ryan testified that Witnesses No. 1, No. 2, No. 3, No. 5, No. 6, and an unnamed member of the TCB shipped packages containing drugs and thousands of dollars between Texas and Sioux Falls. Id. at 38-44. Much of Mr. Ryan's testimony was corroborated through other witness statements and postal business records. Id. at 44.

Mr. Ryan then testified about how Mr. Sauceda was introduced to Witness No. 6. Id. at 45. This information was confirmed by Witnesses No. 6, No. 1, and No. 7. Id. Mr. Ryan testified that Witness No. 6 initially purchased twelve ounces of methamphetamine via Witness No. 1, but it was delivered by Mr. Sauceda. Id. at. 46. Mr. Ryan believed that Witness No. 7 provided some or all the money for this transaction to Mr. Sauceda. Id. This information was later corroborated by Witnesses No. 10 and No. 3. Id. at 48-49. Mr. Ryan

testified that Witness No. 10 informed him that Mr. Sauceda continued to be present at other drug deals in the future.  Id. at 48.

Mr. Ryan then testified that Witness No. 2 informed him of their romantic relationship with Mr. Sauceda.  Id. at 57.  Witness No. 2 also indicated that Witness No. 3 was in a romantic relationship with Mr. Sauceda, which was later confirmed by Witness No. 3.  Id.  Witness No. 2 informed Mr. Ryan that they held a safe containing drugs and money for Mr. Sauceda while he was incarcerated.  Id. at 57-58.  Mr. Ryan testified that after Mr. Sauceda was released from custody, he and Witness No. 4 instructed Witness No. 1 that they were working for Mr. Sauceda now.  Id. at 59. Mr. Ryan then testified that pole camera surveillance footage revealed Mr. Sauceda's known vehicle parked at the residence of Witnesses No. 1 and No. 2.  Id. at 60-62.

Mr. Ryan stated that Witness No. 1 identified Jose Rolando Gonzalez, Jr. as Mr. Sauceda's source of meth to distribute in Sioux Falls and throughout South Dakota.  Id. at 65.  Witness No. 9 also indicated that Mr. Gonzalez participated in the meth distribution in Sioux Falls.  Id.  Mr. Ryan then testified about recorded phone calls Witness No. 2 had with Mr. Sauceda.  Id. at 66.  Mr. Ryan stated that eventually Mr. Sauceda was arrested in Sioux City, Iowa, at the Hard Rock Casino Hotel.  Id. at 95.

Special Agent Mark Minten of the Drug Enforcement Administration (DEA) testified he first had contact with Mr. Sauceda in July of 2016 while executing a federal arrest warrant at the Hard Rock Casino.  Id. at 127.  Agent

Minten described the arrest of Mr. Sauceda and the car they found with him—a 2010 silver Mercedes four-door sedan.  Id. at 128.  Agent Minten testified that the car had a concealed compartment behind a trap door in the backseat.  Id. at 130.  Agent Minten testified that after the arrest, they found four cell phones in Mr. Sauceda's hotel room, travel receipts, a Texas liability insurance card, and a title application.  Id. at 132-33.

On cross examination, Agent Minten testified that while searching Mr. Sauceda's vehicle, no drugs were found, and the drug dogs did not alert. Id. at 142.  Agent Minten testified that based on the odometer reading, someone put around 9,000 miles on the Mercedes between June 3rd, the purchase date based on the title application, and July 26th, the date of Mr. Sauceda's arrest.  Id. at 142-143.  Agent Minten estimated that McAllen, Texas, and Sioux Falls, South Dakota, are 1,350 miles apart.  Id. at 143.

Mr. Ryan then testified about a drug transporter for Mr. Sauceda named Jesse Muniz.  Id. at 144.  Mr. Ryan stated that Mr. Muniz would mail drugs to Sioux Falls from Texas.  Id.  Mr. Ryan testified that Witnesses Nos. 1, 2, 3, 5, 6, and 8 confirmed this.  Id. at 145.  Mr. Ryan testified that one of these packages was intercepted and was associated with Mr. Sauceda.  Id. at 147.

Mr. Ryan testified that the exterior of the intercepted package had a return address on it for an area across the street from an address previously associated with Mr. Sauceda.  Id. at 148.  Mr. Ryan testified that within the package were children's toys containing $13,000 in U.S. currency.  Id. at 149. Mr. Ryan indicated that a latent fingerprint belonging to Mr. Sauceda was

found on the priority mail express address label and two fingerprints were found on the wrapping paper inside the package.  Id. at 150.  This package was addressed to Jose Gonzalez, a known source of drugs for Mr. Sauceda, and for Witnesses No. 1, and Witness No. 2.  Id. at 151.  Mr. Ryan then testified about the quantities of drugs and amount of money delivered by or on behalf of Mr. Sauceda.  Id. at 151-160.  This information was based on information provided by Witnesses Nos. 1, 5, 6, 3, 9, 8, 2, and 10.  Id.

The district court then took up ruling on Mr. Sauceda's objections.  Id. at 169.  Objection 1 as to paragraph 9 of the PSR was sustained.[9]  Id. at 170.  Objections 2 and 3 as to paragraphs 11 and 12 of the PSR were not considered by the court because the court stated it would not consider that evidence when determining Mr. Sauceda's sentence.  Id.  Objection 4 as to paragraph 15 of the PSR was sustained, in part, and portions were struck from the report.  Id. at 170-171.

Objections 5 and 6 as to paragraphs 16 and 17 of the PSR were overruled because the information included was reliable and the government met their burden by a preponderance of the evidence.  Id. at 171.  Objections 7 and 8 as to paragraphs 18 and 19 were sustained, as the government did not meet their burden of proof on that evidence.  Id. at 172.  Objection 9 as to paragraph 20 was sustained, in part.  Id. at 172-173.  Objection 10 as to

---

[9] Objections 1-24 were objections to factual matters described in the PSR regarding activities of the drug conspiracy and Mr. Sauceda.  See CR Docket No. 453 at pp. 1-9, ¶¶ 1-24.  Objections 25-36 were objections to what drugs were attributable to Mr. Sauceda, the USSG calculation, and the statutory mandatory minimum penalty.  Id. at pp. 9-14.

paragraph 21 was overruled based on the government meeting their burden of proof.  Id. at 173.

Objections 11 and 13 as to paragraphs 22 and 24 of the PSR were sustained.  The court sustained Mr. Sauceda's objection to paragraph 23 because the evidence would not factor into his guideline range.  Id. at 175.  Objections 14 and 15 as to paragraphs 25 and 26 were overruled because the government met their burden of proof.  Id.  Objections 16 and 17 as to paragraphs 27 and 28 were sustained, in part, and the court changed portions of the language used in the report to better reflect the evidence.  Id. at 177-178.  Objection 18 as to paragraph 29 of the PSR was overruled because the government met their burden of proof.  Id. at 178.  Objections 19 and 20 as to paragraphs 30 and 31 were sustained, in part, and portions of the language within the PSR were removed to better reflect the evidence.  Id. at 179-180.

Objections 21 and 22 as to paragraphs 32 and 33 of the PSR were overruled because the court found the government sufficiently met its burden of proof.  Id. at 181-182.  Objection 23 as to paragraph 34 of the PSR was sustained in part.  Id. at 182.  Objection 24 as to paragraph 35 of the PSR was sustained, in part, and only the first two sentences were not stricken from the report.  Id. at 183.  Objections 25 and 26 as to paragraphs 36 and 37 of the PSR were overruled.  Id.  Objection 27 as to paragraph 39 was sustained, and the two-level enhancement under § 3C1.1 was not applied to Mr. Sauceda.  Id. at 184.  Objection 28 as to paragraph 44 was sustained, and the court indicated that it would consider whether the defendant had accepted

12

responsibility when determining Mr. Sauceda's objection to paragraph 54. Id. at 185.

Objection 29 as to paragraph 46 of the PSR dealt with Mr. Sauceda's base offense level. The court determined that because the drug quantity fell within the 30,000-90,000-kilogram range, the report properly stated that Mr. Sauceda's offense level was 36, and the court overruled the objection. Id. Objection 30 as to paragraph 50 dealt with Mr. Sauceda's role in the offense. Id. After argument was heard by both parties, the court found that Mr. Sauceda was an organizer or leader of five or more participants under § 3B1.1 and overruled the objection. Id. at 190. Objection 31 as to paragraph 51 dealt with an obstruction of justice enhancement, which the court earlier determined to not apply; thus, the objection was sustained. Id. at 190-191. Objection 32 as to paragraph 52 dealt with the total base offense level. Id. at 191. The court sustained the objection and found that the total base offense level was 42. Id.

Objection 33 as to paragraph 54 of the PSR dealt with Mr. Sauceda's acceptance of responsibility. Id. The government argued that it should not apply because: (1) the defendant made statements to a probation officer denying involvement; and (2) through objections, the defendant denied most facts within the PSR. Id. at 191-193. Mr. Eirinberg argued that Mr. Sauceda "at least accepted some of the responsibility," by: (1) entering an open plea and (2) entering a factual basis statement which accounted for most of the drugs involved in this case. Id. at 193-194. The court then asked Mr. Eirinberg why,

in objection 5, Mr. Sauceda objected to the drugs found within a backpack.  Id.

at 194.  Mr. Eirinberg indicated that this was an error, and that he did not

intend to exclude any of the drugs found in the backpack.  Id.  The court

overruled Mr. Sauceda's objection and denied acceptance of responsibility,

stating:

> The defendant basically objected to every single factual statement
> set forth in the presentence investigation.  The government had to
> put on evidence related to every paragraph, including all of the
> drugs the defendant was responsible for, evidence about his role in
> the offense, and pretty much everything dealing with the facts of
> this case, all of the relevant conduct.
>
> I find that his denials were frivolous, and that he's acted in a
> manner inconsistent with acceptance of responsibility.
>
> So the two-level decrease for acceptance of responsibility will not
> be applied, and the objection to Paragraph 54 is overruled.

Id. at 196.

Objection 34 as to paragraph 55 was sustained, in part, and the total

offense level was changed to 42.  Id. at 196-197.  Objection 35 as to paragraph

97 dealt with the mandatory minimum term.  Id. at 197.  The court found that

due to a prior conviction and the government's notice of it under an § 851(a)

enhancement, a 15-year mandatory minimum applied, and the objection was

overruled.  Id. at 197-198.  Objection 36 as to paragraph 98 dealt with

Mr. Sauceda's guideline range.  The court stated that because the total offense

level was 42 and the defendant was in criminal history category IV, the

guideline range would be 360 months to life.  Id. at 198.  Both counsel agreed,

and the objection was sustained.  Id.

The court considered Mr. Sauceda's motions for downward variance and downward departure and denied both.  Id. at 199-206.  The court then sentenced Mr. Sauceda to 360 months, at the bottom end of his guideline range.  Id. at 209.

## F.    Direct Appeal

Mr. Sauceda timely filed his notice of appeal.  See CR Docket No. 480. Attorney James Eirinberg was appointed to represent Mr. Sauceda on his appeal.  See Docket No. 483.  On appeal, Mr. Sauceda argued "that the 360-month sentence [was] substantively unreasonable," and "the court procedurally erred when it declined, in part, to grant a downward departure for the time [he] spent in county jails."  See United States v. Sauceda, 960 F.3d 495, 497-98 (8th Cir. 2020).  The Eighth Circuit affirmed Mr. Sauceda's sentence.  Id. at 499.

## DISCUSSION

### A.    Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often

in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).

The enactment of § 2255 resolved these issues by requiring that the motion be

filed "in the sentencing court."  Id. at 220.

The scope of a § 2255 motion is seemingly broader than the scope of a

habeas petition, the latter of which is typically limited to allegations of a

constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set

aside or correct" a federal sentence "upon the ground that the sentence was

imposed in violation of the Constitution or laws of the United States, or that

the court was without jurisdiction to impose such sentence, or that the

sentence was in excess of the maximum authorized by law, or is otherwise

subject to collateral attack."  See 28 U.S.C. § 2255(a).  Where the allegation for

relief is *not* based on a violation of a Constitutional or federal statutory right or

an assertion that the court was without jurisdiction, the Supreme Court has

read a "fundamentality" requirement into § 2255—relief is available for only

those errors which constitute a "fundamental defect which inherently results in

a complete miscarriage of justice" or "an omission inconsistent with the

rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424,

428 (1962) (citing Bowen v. Johnston, 306 U.S. 19, 27 (1939)); see Peguero v.

United States, 526 U.S. 23, 27-30 (1999) (noting collateral relief may be

appropriate when a movant is prejudiced by a court's error).

Generally, petitioners are precluded from asserting claims pursuant to

§ 2255 that they failed to raise on direct appeal.  United States v. Darden, 915

F.3d 579, 586 (8th Cir. 2019); United States v. Frady, 456 U.S. 152, 158-59,

167-68 (1982) (finding proper standard for reviewing claims not raised on direct appeal is cause and prejudice). "A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." McNeal, 249 F.3d at 749 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors. If a movant fails to demonstrate prejudice, the court need not address whether cause exists to excuse a procedural default. Moore-El v. Luebbers, 446 F.3d 890, 898 (8th Cir. 2006).

"[O]rdinarily, [appellate courts] do not address claims of ineffective assistance of counsel on direct appeal because such claims usually involve facts outside of the existing record;" such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. See United States v. Campbell, 6 F.4th 764, 776 (8th Cir. 2014) (quoting United States v. Adkins, 636 F.3d 432, 434 (8th Cir. 2011)); see also United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) ("[I]neffective assistance of counsel [claims] are generally not cognizable on direct appeal" and "may be heard only if a miscarriage of justice would otherwise result or if the district court has developed a record on the issues") (internal citations omitted). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally deficient counsel.

## B.    Mr. Sauceda's Motion to Strike

Mr. Sauceda filed a motion to strike or limit the scope of attorney James Eirinberg's sworn affidavit because "the allegations and legal arguments presented in the Affidavit go beyond the scope of what the Court requested." See Docket No. 22, p. 1.  "Absent unusual circumstances, defense attorneys should be given the opportunity to respond to claims of their ineffectiveness, such as in an affidavit."  United States v. Murray, 2:09-cr-90-2, 2017 WL 1052579, *19 (D. Vt. Mar. 20, 2017) (citing Bloomer v. United States, 162 F.3d 187, 194 (2nd Cir. 1998)).

In November 2021, this court ordered:

> That if the attorney-client privilege waiver form is signed and filed, the government shall forward a copy of the signed attorney-client privilege waiver form to James Eirinberg, along with a copy of this order and Mr. Sauceda's motion and amended motion pursuant to § 2255 and related attachments (Docket Nos. 1 & 2).  Attorney James Eirinberg shall within 21 days of receiving the attorney-client privilege waiver form provide and file with the clerk an affidavit responding to the specific allegations in the § 2255 motion concerning his representation of Mr. Sauceda.

See Docket No. 9, p. 3.  Soon thereafter, Mr. Sauceda filed a signed attorney-client privilege waiver form.  See Docket No. 10.  It states, "[t]he form authorizes your attorney to disclose confidential communications *only* to the extent necessary to address the ineffective assistance of counsel claims that are raised by your 28 U.S.C. § 2255 motion."  Id. (emphasis added).

The Eighth Circuit has recognized that "[i]t has long been the law that a client may waive protection of the privilege, either expressly or impliedly." Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974).  Mr. Sauceda "has a

privilege to keep his conversations with his attorney confidential, but that privilege is waived when [he] attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence." Id. "When a client calls into public question the competence of his attorney, the privilege is waived." Id. (citing Laughner v. United States, 373 F.2d 326, 327 (5th Cir. 1967)).

"Under Federal Rule of Civil Procedure 12(f), 'the court may strike from a *pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" Donelson v. Ameriprise Financial Services, Inc., 999 F.3d 1080, 1091 (8th Cir. 2021) (quoting FED. R. CIV. P. 12(f)) (emphasis added). "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." Id. (quoting BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007)). "Significantly, Rule 12(f) applies to pleadings, and 'motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." United States v. Viola, CIV. 02-9014, 2003 WL 21545108, at *3 (E.D. Pa. July 7, 2003) (quoting 2 *Moore's Federal Practice,* § 12.37 (Matthew Bender 3d ed.)).

The "overwhelming weight of authority" holds that an affidavit does not "constitute[] a pleading." Big Stone Broadcasting, Inc. v. Lindbloom, 161 F.Supp.2d 1009, 1013 (D.S.D. Aug. 27, 2001) (citing Sellers v. Henman, 41 F.3d 1100, 1101 (7th Cir. 1994); York v. Ferris State Univ., 36 F.Supp.2d 976, 980 (W.D.Mich. 1998); E.E.O.C. v. Admiral Maintenance Serv., L.P., 174 F.R.D.

19

643, 645-47 (N.D.Ill. 1997); <u>Knight v. United States</u>, 845 F.Supp. 1372, 1374 (D.Ariz. 1993); <u>International Longshoremen's Ass'n, Steamship Clerks Local 1624, FFL-CIO v. Virginia Int'l Terminals, Inc.</u>, 904 F.Supp. 500, 504 (E.D.Va. 1995)).

A similar factual scenario occurred in <u>Holly v. United States</u>, CIV-08-404-F, 2009 WL 3029603, at *2 (E.D. Ok. Sept. 17, 2009).  In <u>Holly</u>, the petitioner filed a motion pursuant to 28 U.S.C. § 2255 alleging "claims that he received ineffective assistance of counsel."  <u>Id.</u> at *1.  Petitioner's trial and appellate counsel filed an affidavit in response to their motion, and petitioner "filed a motion to strike the affidavit . . . pursuant to Rule 12(f)."  <u>Id.</u>  The court held that "neither the affidavit nor the response are candidates for relief under Rule 12(f) because neither of the alleged offending filings are pleadings and Rule 12(f) provides for a motion to strike a 'pleading.' "  <u>Id.</u> at *2 (citing <u>Admiral Maintenance Serv., L.P.</u>, 174 F.R.D. at 645-47).  The court denied the motion to strike.  <u>Id.</u>

The same is true here.  Mr. Sauceda filed a motion to strike portions of Mr. Eirinberg's affidavit in response to his § 2255 motion.  Docket Nos. 22 & 24.  Because Mr. Eirinberg's affidavit is not a pleading for purposes of Rule 12(f), Mr. Sauceda's motion to strike is denied.  However, the court is sympathetic to Mr. Sauceda's arguments.  It is apparent that portions of Mr. Eirinberg's affidavit went beyond the scope of addressing the allegations of ineffective assistance of counsel.  <u>See</u> Docket No. 9, p. 3 ("Attorney James Eirinberg shall . . . file with the clerk an affidavit *responding to the specific*

*allegations in the § 2255 motion concerning his representation of Mr. Sauceda.*").
Thus, the court does not consider the legal arguments and conclusions
contained in Mr. Eirinberg's affidavit when analyzing Mr. Sauceda's ineffective
assistance of counsel claims.

### C.   Mr. Sauceda's Ineffective Assistance Claims

#### 1. Standards Governing Ineffective Assistance Claims

"The Sixth Amendment guarantees criminal defendants 'the right . . . to
have Assistance of Counsel for [their] defense." <u>Garza v. Idaho</u>, 139 S.Ct. 738,
743 (2019); U.S. Const. amend. VI.  The Supreme Court "has recognized that
'the right to counsel is the right to effective assistance of counsel.' " <u>Strickland
v. Washington</u>, 466 U.S. 668, 686 (1984) (quoting <u>McMann v. Richardson</u>, 397
U.S. 759, 771, n.14 (1970)).  <u>Strickland</u> is the benchmark case for determining
if "counsel's assistance was so defective as to" violate a criminal defendant's
Sixth Amendment rights and "require reversal of a conviction." <u>Id.</u> at 687.

"When a convicted defendant complains of the ineffectiveness of
counsel's assistance, the defendant must show that counsel's representation
fell below an objective standard of reasonableness." <u>Id.</u> at 687-688.  The
defendant must also show that counsel's unreasonable errors or deficiencies
prejudiced the defense and affected the judgment. <u>Id.</u> at 691-692.  The
defendant must show, "there is a reasonable probability that, absent the
errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id.</u>
at 695.  In sum, a defendant must satisfy the following two-prong test. <u>Id.</u>
at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quoting State v. Hall, 982 S.W.2d 675, 680 (Mo. 1998)). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. (citing Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)).

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009). " 'American Bar Association standards and the like' are 'only guides' to what reasonableness means, not its definition." Id. at 8 (quoting Strickland, 466 U.S. at 688)). The Supreme Court distinguishes between those cases "in which the new evidence 'would barely have altered the sentencing profile presented to the sentencing judge,' " and those that would have had a

reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009) (quoting Strickland, 466 U.S. at 700)).

In assessing the prejudice prong, it is important for courts to consider " 'the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding'—and 'reweigh it against the evidence in aggravation.' " Id. at 41 (quoting Williams v. Taylor, 529 U.S. 362, 397-398 (2000)). It is not necessary for the petitioner "to show 'that counsel's deficient conduct more likely than not altered the outcome' " of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quoting Strickland, 466 U.S. at 693-694)). "Judicial scrutiny of counsel's performance must be highly deferential," with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The court now turns to each of Mr. Sauceda's assertions that his Sixth Amendment right to effective assistance of counsel was violated.

### 2. Witness Sequestration at Mr. Sauceda's Sentencing Hearing

Mr. Sauceda's first claim is that "[t]rial counsel rendered ineffective assistance when he failed to invoke Federal Rule of Evidence 615 rule of sequestration prior to the government calling its first witness" at the sentencing hearing. Docket No. 2, p. 13. Federal Rule of Evidence 615 states, "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." FED. R. EVID. 615. However, under FED. R. EVID. 1101(d), "these rules—except for those on privilege—do not apply to the

following . . . miscellaneous proceedings such as . . . sentencing." FED. R. EVID. 1101(d).

Again, "[t]he applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." Williams v. United States, 452 F.3d 1009, 1012 (8th Cir. 2006) (quoting Saunders v. United States, 236 F.3d 950, 952 (8th Cir. 2001)); Strickland, 466 U.S. at 687. "Both parts of the Strickland test must be met in order for an ineffective assistance of counsel claim to succeed." Id. (citing Anderson v. United States, 393 F.3d 749, 753 (8th Cir. 2005)).

Here, Mr. Eirinberg agrees that he never requested the government's witnesses be sequestered at Mr. Sauceda's sentencing hearing. See Docket No. 16, p. 6. Mr. Eirinberg stated that he has never made such a request and he has never heard of any other federal defense counsel requesting sequestration at a sentencing hearing. Id. Mr. Eirinberg's reasoning for not making such a request was, in his words, "very simple: defense counsel has no right to request sequestration of the Government's witnesses at the sentencing phase." Id. The government similarly argues "Sauceda has not shown counsel was ineffective because Rule 615 does not apply at sentencing hearings." Docket No. 19, p. 10. The court agrees.

Because Federal Rule of Evidence 1101 states that the rules of evidence do not apply at sentencing proceedings, a request to sequester the

government's witnesses pursuant to Rule 615 by Mr. Eirinberg would have been frivolous. FED. R. EVID. 1101(d). Lawyers are officers of the court and have an ethical obligation to ensure that all requests have a basis in law and fact. See MODEL RULE OF PROF'L CONDUCT R. 3.1 (Am. Bar. Ass'n 1969). Filing a motion or making a request that has no basis in law or fact could subject a lawyer to sanctions. See Cooter & Gell v. Hartmarz Corp., 496 U.S. 384, 393 (1990) (Fed. R. Civ. P. 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposes for any improper purpose. An attorney who signs the paper without such a substantiated belief shall be penalized by an appropriate sanction.").

Additionally, the Eighth Circuit has made it clear that trial counsel does not provide deficient performance when they choose not to raise a frivolous or futile motion or objection. Anderson v. United States, 762 F.3d 787, 794 (8th Cir. 2014) ("Counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile.") (citations omitted); Garrett v. United States, 78 F.3d 1296, 1303 n.11 (8th Cir. 1996) ("Ineffective assistance should not be found under Strickland when counsel fails to perform those acts which clearly appear to be futile or fruitless at the time the decision must be made."); Hale v. Lockhart, 903 F.2d 545, 549-50 (8th Cir. 1990) ("[W]e therefore hold that the decision of Hale's counsel not to file a futile motion to transfer was neither deficient performance on his part nor prejudicial to Hale."). Mr. Eirinberg's representation was not "deficient" for failing to make a frivolous

request to sequester the government's witnesses at Mr. Sauceda's sentencing hearing.  Strickland, 466 U.S. at 667-688.

Mr. Sauceda argues he was prejudiced because "[e]very single agent that testified during the sentencing hearing was able to corroborate the same statements they previously heard during the prior witness's testimony," and there was "no control on the flow of information between the agents."  Docket No. 21, p. 3; Docket No. 2, p. 14.  To show prejudice, Mr. Sauceda has the burden of proving "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Mr. Sauceda contends, without much justification, that "the effects on the information presented to the court were devastating."  Docket No. 2, p. 14. "A claim which 'is merely a conclusory allegation, unsupported by specifics' is a 'proper subject for summary dismissal.' " Dones-Vargas v. United States, 4:20-CV-04124-KES, 2021 WL 5547701, at *10 (D.S.D. Aug. 20, 2021) (quoting Smith v. United States, 677 F.2d 39, 41 (8th Cir. 1982)).  "The principle of liberal construction will not save [Mr. Sauceda'] pleadings if they are based on conclusory or nonspecific factual allegations."  Id. (quoting Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985)).

Mr. Sauceda has not provided the court any specifics on how the government witnesses not being sequestered prejudiced him.  According to the sentencing transcript, Inspector Ryan, Agent Byron, and Agent Minten all provided specific details regarding each of their respective parts of the

investigation of Mr. Sauceda.  <u>See</u> CR Docket No. 513.  Each witness gave testimony and referenced different unnamed cooperators who individually corroborated their testimony through other witness statements, information from subpoenas, information from businesses, surveillance videos, and business records.  <u>Id.</u>  Thus, while the witnesses were allowed to hear each other's testimony, there is no evidence, that their testimony was "tailored" to each other.  There was no overlap between their respective testimonies—each testified to a different part of the investigation, so listening to one another testify would not affect what each witness said.  Mr. Sauceda has not shown, beyond "[mere] conclusory allegation[s]," how the lack of sequestration negatively impacted his sentence.  <u>Dones-Vargas</u>, 2021 WL 5547701, at *10. Therefore, he has not demonstrated prejudice.

Mr. Sauceda also argued that "[a]lthough Rule 615 does not apply to sentencing hearings, the evidence considered by the sentencing court must still be reasonably reliable."  Docket No. 21, p. 2.  Mr. Sauceda cites <u>United States v. Morales</u>, 994 F.2d 386, 389 (7th Cir. 1993) in support.  <u>Id.</u>  In <u>Morales</u>, Mr. Morales "challenge[d] the judge's decision to enhance his offense level by two points," for being a leader/organizer under § 3B1.1(c).  <u>Morales</u>, 994 F.2d at 388.  Mr. Morales' issue stems from the sentencing judge being the same judge that tried Mr. Morales' co-defendants shortly before the sentencing hearing.  <u>Id.</u> at 389.  Mr. Morales argued that "it was improper for the judge to sentence him on the basis of evidence presented at a trial to which he was not a party.  Neither he nor his lawyer was present at that trial."  <u>Id.</u>

27

The Seventh Circuit held that while "there is nothing improper about a judge's taking into account evidence that mightn't have been admissible . . . the judge must not do this in a way that creates unfair surprise." Id. Further, "[t]he defendant has a right to know what evidence will be used against him at the sentencing hearing," and the sentencing court should have given notice to Mr. Morales if it was "going to base an enhancement of Morales' sentence on the evidence in the trial of Morales' codefendants." Id. However, because counsel did not object or request a continuance on this issue, "any objection to the judge's use of the evidence at the trial [was] waived, [and] any error in that use was harmless and therefore certainly not plain." Id. at 390.

The facts of Morales are different than the case at hand. Mr. Sauceda does not assert he was "surprised" or had no notice of the government's witnesses at the sentencing hearing or that the sentencing judge was using evidence from other legal proceedings to determine his sentence. Mr. Sauceda merely argues that without the government's witnesses being sequestered, their testimony could not be "reliable" because they were able to "tailor" their testimony to support the allegations in the PSI report. Docket No. 21, p. 2-3.

However, the sentencing judge considered all the evidence presented at the sentencing hearing, addressed all of Mr. Sauceda's factual objections to the PSR, and determined that the witnesses' testimony was reliable and sufficient for the government to meet their burden of proof for many of the allegations within the PSR. CR Docket No. 513. The court did not consider evidence from prior proceedings to which Mr. Sauceda had not been a party. It is "well

established that in sentencing matters a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." United States v. McArthur, 11 F.4th 655, 660 (8th Cir. 2021) (quoting United States v. Rodriguez, 711 F.3d 928, 938 (8th Cir. 2013)).  The sentencing court found the government witnesses' testimony was reliable and sufficient to meet the government's burden of proof.  There is no showing that sequestration would have affected this determination in any way.

Because Mr. Sauceda has failed to show that Mr. Eirinberg's "performance was deficient" and "such deficient performance prejudiced his defense," by not sequestering the government's witnesses, this magistrate judge recommends that Mr. Sauceda's first claim be dismissed without holding an evidentiary hearing.  Williams, 452 F.3d at 1012.

### 3. Attorney Eirinberg's Objections to the PSR

Mr. Sauceda argues "[c]ounsel provided ineffective assistance by objecting to every single fact in the Presentence Investigation Report" and challenging "facts in the PSR Report that had been stipulated during the change of plea hearing."  Docket No. 21, p. 4; Docket No. 2, p. 14.

The parties are at odds as to whose decision it was to file the 36 objections to the PSR.  Mr. Sauceda claims he "never advised counsel to object to every single factual statement in the PSI report," and "[c]ounsel, which is entirely in charge for the pleadings filed under his name in this District, somehow wishes for this Court to think that Sauceda would control his filings, directions, or how to handle the case."  Docket No. 21, p. 5; Docket No. 2,

p. 17.  Mr. Eirinberg and the government assert the objections were filed "entirely due to Sauceda's insistence" and "at Sauceda's behest."  Docket No. 16, p. 8; Docket No. 19, p. 13.  From the current record, it would be impossible for the court to determine whether Mr. Eirinberg acted alone, or at the insistence of Mr. Sauceda, when filing the objections to the PSR.  But that determination is inapposite.  The question before the court is whether Mr. Sauceda has met his burden of showing Mr. Eirinberg's allegedly deficient "performance prejudiced his defense" by filing numerous objections to the PSR. Williams, 452 F.3d at 1012.  The court believes he has not shown prejudice.

Mr. Sauceda contends that "[c]ounsel made the decision to challenge each and every objection in the PSI report, causing Sauceda to lose his acceptance of responsibility and resulting in the elevated sentence," thus "[p]rejudice has been easily shown."  Docket No. 21, p. 5 & 7.  Mr. Sauceda's argument is not borne out by the record.

The timing of events is instructive.  The draft PSR was filed first, which recommended a USSG range of life imprisonment and recommended that Mr. Sauceda receive *no* credit for acceptance of responsibility.  See CR Docket No. 449 at pp. 12-14, ¶¶40-44, 54.  This was because Mr. Sauceda acknowledged responsibility for only a fraction of the drugs involved in the conspiracy.  Id.  Counsel did not file his objections until *after* the draft PSR was issued.  At this point, there was nothing to lose.  Had the draft PSR recommended Mr. Sauceda *receive* credit for acceptance of responsibility, then, yes, filing numerous objections to the facts in the PSR could risk losing that

30

credit.  But where a PSR recommends *no* credit for acceptance of responsibility, the USSG calculation can only go down at that point as a result of making objections.  There was no risk in making the objections.

Furthermore, the court notes that more than half of counsel's objections were sustained by the court.  Of the 36 objections made, 20 were sustained in whole or in part.  In particular, counsel's objections to the adjustment for obstruction of justice was sustained, which resulted in two fewer points in the USSG total offense level.  See CR Docket No. 453 at p. 10, ¶ 27; p. 12, ¶ 31.  In the end, because of those objections of counsel's which were sustained, Mr. Sauceda's USSG calculation was 360 months to life whereas before the objections were made, Mr. Sauceda's USSG calculation was life in prison.  A significant change and benefit to Mr. Sauceda accrued due to counsel's objections.  This is the very opposite of prejudice.

Mr. Sauceda's argument is premised on the idea that, without counsel's objections, he would have been given credit for accepting responsibility.  This flies in the face of both the draft and final PSRs.  But assuming Mr. Sauceda's argument has some credence, the court examines the math.  The sentencing court determined the final total offense level was 42 (after sustaining many of counsel's objections) and Mr. Sauceda was in criminal history category IV.  CR Docket No. 513, p. 198.  Without the two-level reduction for acceptance of responsibility, Mr. Sauceda's guideline range was 360 months to life.  See U.S.S.G Ch. 5, Pt. A (Sentencing Table).  Even if the sentencing court granted Mr. Sauceda the two-level reduction and the government moved for a third

point reduction, an offense level of 39 with a criminal history category of IV would still have a guideline range of 360 months to life.  Id.

"Where an objection to a PSR, if it had been made and sustained, yields the same potential sentence under the USSG, a petitioner under § 2255 cannot establish Strickland prejudice as a matter of law based on the petitioner's lawyer's failure to lodge the objection."  Smith v. United States, 4:20-CV-04019-KES, 2020 WL 10054280, at *19 (D.S.D. Oct. 1, 2020), report and recommendation adopted, 2021 WL 1940816 (D.S.D. May 14, 2021) (citing Montanye v. United States, 77 F.3d 226, 230-231 (8th Cir. 1996) (where the petitioner was sentenced to 360 months incarceration, and the Guidelines range was 360 months to life under the PSR as written, but also the same range if the objection had been made and sustained, petitioner could not show prejudice); see also Sun Bear v. United States, 644 F.3d 700, 705 (8th Cir. 2011) (movant cannot state a claim under § 2255 attacking district court's sentence where the sentence was within statutory limits and the same sentence could have been imposed even if the movant were granted the § 2255 relief he requests).

"However, where counsel failed to make objections to a PSR and it cannot be determined as a matter of law that those objections would not have affected the petitioner's sentence, a question of fact is created which necessitates an evidentiary hearing."  Id. (citing West v. United States, 994 F.2d 510, 513 (8th Cir. 1993) (evidentiary hearing required on petitioner's § 2255 motion where petitioner alleged ineffective assistance of counsel for failure to object to PSR

and it could not be conclusively determined from the record that the objections would have had no effect on the petitioner's sentence)); United States v. Ford, 918 F.2d 1343, 1350 (8th Cir. 1990) (holding that defendant in direct appeal established ineffective assistance of counsel where counsel failed to object to the fact that the PSR did not give him credit for acceptance of responsibility and, had defendant received such credit, his sentencing range under the Guidelines would have been different).[10]

Unlike Ford, Mr. Sauceda cannot show his sentencing range under the Guidelines would have been different if the court granted the acceptance of responsibility reduction. His Guideline range would have remained at 360 months to life, and thus, he is unable to show he was prejudiced by counsel's decision to object extensively to the PSR. Because Mr. Sauceda cannot prove prejudice, the court need not address the deficient-performance prong of the Strickland analysis. Strickland, 466 U.S. at 697 (a court may address the two factors in any order and a dispositive finding that the movant was not prejudiced relieves the court of the necessity of addressing deficient performance). Therefore, this magistrate judge recommends this claim of Mr. Sauceda's be dismissed without holding an evidentiary hearing.

---

[10] The court recognizes that Montanye, West, and Ford all pre-date the Court's decision in Booker, which made the USSG advisory only. See United States v. Booker, 543 U.S. 220, 245 (2005). However, even though the USSG are now only advisory, the sentencing court is still required to calculate a defendant's sentencing range under the USSG and give "serious consideration" to the USSG range before analyzing the factors under 18 U.S.C. § 3553. Gall v. United States, 128 S. Ct. 586, 594 (2007). Hence, this court concludes that the Montanye, West, and Ford cases remain viable precedent for collateral proceedings in a post-Booker world.

### 4. Attorney Eirinberg's Failure to Appeal the Leader/Organizer Enhancement

Mr. Sauceda asserts "[c]ounsel rendered ineffective assistance when he failed to raise on appeal the leader organizer enhancement." Docket No. 21, p. 8. Pursuant to § 3B1.1(a) of the federal sentencing guidelines, "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." See U.S.S.G § 3B1.1(a). "A 'participant' for the purposes of § 3B1.1 is a person criminally responsible for the commission of the offense." United States v. Vasquez-Rubio, 296 F.3d 726, 729 (8th Cir. 2002) (citing § 3B1.1, n.1).

"Organizer and leader are defined broadly." United States v. McSmith, 968 F.3d 731, 736 (8th Cir. 2020) (citing United States v. Lopez, 431 F.3d 313, 317-18 (8th Cir. 2005)). "A leadership enhancement is warranted when an individual organizes or directs the participation of another and is reviewed for clear error." United States v. Rodriguez-Ramos, 663 F.3d 356, 364 (8th Cir. 2011) (quoting United States v. Van Chase, 137 F.3d 579, 583 (8th Cir. 1998)). "Where, as here, one individual in a multidefendant enterprise makes the critical strategic and operational decisions on behalf of the group . . . that individual exhibits precisely the sort of characteristics that are emblematic of an organizer or leader." United States v. Lopez, 328 Fed.Appx. 352, 355 (8th Cir. 2009) (quoting United States v. Drapeau, 121 F.3d 344, 350 (8th Cir. 1997)).

"He does not have to be 'the' organizer or leader . . . [and] need not have organized or led all of the other participants in the activity." United States v.

Bahena, 223 F.3d 797, 804 (8th Cir. 2000).  "The government need only prove by a preponderance of the evidence that the leader-organizer enhancement is appropriate."  Rodriguez-Ramos, 663 F.3d at 364 (citing United States v. Garcia-Hernandez, 530 F.3d 657, 665 (8th Cir. 2008)).

Mr. Sauceda contends that Mr. Eirinberg should have raised this issue on direct appeal because "[a]bsent co-conspirators' hearsay statements, which did not meet minimal indicia of a reliability standard, there was no evidence indicat[ing] that Sauceda exercised some control over others involved in the commission of drug offense."  Docket No. 2, p. 18.  At the sentencing hearing, the court overruled Mr. Sauceda's objection to the leader organizer enhancement and provided a detailed reasoning on why the court believed Mr. Sauceda was a leader or organizer under § 3B1.1(a).  See CR Docket No. 513, p. 190.  In Mr. Eirinberg's affidavit, he confirmed that he did not raise this issue on appeal because "[a]fter a very thorough review of all the records and the evidence, I believed that the argument lacked any merit."  With this, the government argues that Mr. Eirinberg made a "strategic decision" to not raise the issue on appeal, and thus the claim lacks merit.  Docket No. 19, p. 18.  The court agrees.

"The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal."  New v. United States, 652 F.3d 949, 953 (8th Cir. 2011) (citing Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998)).  "[A]bsent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy."  Id. (quoting United States

v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008)).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal."  Id. at 954 (quoting Brown, 528 F.3d at 1033). "It is difficult to overcome Strickland's presumption of reasonableness unless the 'ignored issues are clearly stronger than those presented.' "  Walker v. United States, 810 F.3d 568, 579 (8th Cir. 2016) (quoting Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006)).

Here, after reviewing the evidence the government presented at the sentencing hearing, and having his objection to the enhancement overruled, Mr. Eirinberg decided that raising the enhancement issue on appeal would be fruitless.  Docket No. 16, p. 11.  After review of the record, this strategic decision by Mr. Eirinberg was not contrary to the evidence, and Mr. Eirinberg did not provide "deficient" representation by failing to raise this issue on appeal.

Assuming, arguendo, that Mr. Eirinberg's failure to raise this issue on appeal was "deficient," Mr. Sauceda has not demonstrated how the alleged deficiency prejudiced him.  The sentencing court overruled Mr. Sauceda's objection to the § 3B1.1(a) enhancement, finding that he was a "sergeant" within the drug organization.  CR Docket No. 513, p. 190.  The court explained it believed the testimony of the agents and it was "all verified both by statements of witnesses and telephone calls and drugs that were seized."  Id.

The court also found that there were "five or more participants," and, thus, sufficient evidence to warrant the enhancement.  Id.; see Lopez, 325

Fed.Appx. at 345-355 (affirming the district court's finding "that there were clearly five or more participants involved in the conspiracy, and that Lopez was a leader to, at a minimum, four of those individuals."); Drapeau, 121 F.3d at 350 (affirming district court's finding that the defendant was a leader or organizer of a criminal conspiracy "consist[ing] of five members.")  Again, "a district court's assessment of witness credibility is . . . virtually unassailable on appeal," and "almost never clear error given the court's comparative advantage at evaluating credibility."  McArthur, 11 F.4th at 660; United States v. Woods, 596 F.3d 445, 448 (8th Cir. 2010).  The sentencing court found that the § 3B1.1(a) enhancement should apply, and Mr. Sauceda has not provided the court with any details on how that outcome may have been different if Mr. Eirinberg appealed the issue.

Mr. Sauceda contends that "whether hearsay testimony is sufficient to support a sentencing enhancement is a claim that may merit some relief on appeal."  Docket No. 2, p. 19.  However, this is just a mere "conclusory allegation, unsupported by specifics."  Smith, 677 F.2d at 41.  Mr. Sauceda has not provided the court with any law or facts to support this assertion, thus he has failed to meet his burden to show the outcome would have been different if Mr. Eirinberg raised this issue on appeal.

Because Mr. Sauceda has failed to show that Mr. Eirinberg's "performance was deficient" and "such deficient performance prejudiced his defense," by failing to appeal the leader organizer enhancement under § 3B1.1(a), this magistrate judge recommends Mr. Sauceda's third claim of

ineffective assistance of counsel be dismissed without holding an evidentiary hearing. Williams, 452 F.3d at 1012.

### 5. Attorney Eirinberg's Cumulative Errors

Mr. Sauceda argues that "[t]he cumulative impact of trial and appellate counsels' [sic] errors addressed herein requires resentencing." Docket No. 2, p. 19. He asserts that the "errors here were many, they were all interrelated and their cumulative impact was devastating." Id. In support, Mr. Sauceda cites United States v. Fernandez, 145 F.3d 59, 66 (1st Cir. 1988), United States v. Hands, 184 F.3d 1322, 1344 (11th Cir. 1999), and United States v. Munoz, 150 F.3d 401, 418 (5th Cir. 1998). Id. However, none of these cases from other circuits deal with ineffective assistance of counsel claims arising out of 28 U.S.C. § 2255.

The Eighth Circuit does not aggregate ineffective assistance of counsel claims as a ground for habeas relief. United States v. Brown, 528 F.3d 1030, 1034 (8th Cir. 2008) (citing Middleton v. Roper, 455 F.3d 838, 846-51 (8th Cir. 2006) (finding no deficient performance on any of petitioner's four individual claims of ineffective assistance of counsel, and rejecting argument that the four claims should be considered cumulatively to determine prejudice); see also Hall, 296 F.3d at 692 ("a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."); Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990) ("cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own."); United States v. Robinson, 301 F.3d 923, 925 n.3 (8th Cir. 2002) ("the

numerosity of the alleged deficiencies does not demonstrate by itself the necessity for habeas relief."); Wainwright, 80 F.3d at 1233 ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief.").  Therefore, this magistrate judge recommends Mr. Sauceda's last claim of ineffective assistance of counsel be denied.

**D.    No Hearing is Warranted**

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New, 652 F.3d at 954 (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).  "A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).

Here, even if this court were to accept the veracity of Mr. Sauceda's claims, he would not be entitled to habeas relief under 28 U.S.C. § 2255.  Thus, a hearing is not warranted.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 18] and dismissing Mr. Sauceda's petition [Docket No. 1] with prejudice and without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 17th day of June, 2022.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge